**BRYAN CAVE LEIGHTON PAISNER LLP**
Eric Martin, California Bar No. 330534
Meryl Macklin, California Bar No. 115053
Simren K. Gill, California Bar No. 318288
Helen C. Goodman, California Bar No. 324725
Sasha D. Riedisser, *pro hac vice*
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4070
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
Email: eric.martin@bclplaw.com; macklin@bclplaw.com; simren.gill@bclplaw.com;
helen.goodman@bclplaw.com; sasha.riedisser@bclplaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CARDSTARTER, LTD.,<br><br>                    Plaintiff,<br><br>          v.<br><br>SUNDAESWAP, INC.,[1] et al.,<br><br>                    Defendants. | Case No. 3:22-cv-00757-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: August 4, 2022<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Judge:    Hon. Richard Seeborg |

---

[1]    The correct entity name is SundaeSwap Labs, Inc.

# **TABLE OF CONTENT**

**Page**

I.      Introduction ............................................................................................. 1
II.     Wyoming Law Applies to CardStarter's "Gentlemen's Agreement" Claims .......... 1
III.    CardStarter's FAC is a Sham Pleading. ............................................... 2
IV.     CardStarter Failed to Allege a Claim for Violation of the UCL .............................. 4

        A.      CardStarter has not Adequately Pleaded it Lacks an Adequate Remedy at Law ...... 5

        B.      CardStarter Was Not Injured By Defendants' Alleged Actions ............................... 6

V.      CardStarter Did Not Adequately Allege the Existence of the Gentlemen's
Agreement.      7

        A.      CardStarter's Alleged Promise Was Illusory, and its Purposefully Unclear Pleading

                Cannot Cure That. .................................................................................... 7

        B.      No Contract Was Formed through the "Sounds Good" Message in Light of the Type

                of Transaction, the Parties' Ongoing Negotiations, and Missing Essential Terms.  10

                1.      The time of performance and the nature and value of the consideration are

                        essential terms. ............................................................................. 10

                2.      Under the facts as pleaded in the FAC, the "sounds good" instant message

                        could not have formed a contract. .................................................. 11

VI.     Promissory Estoppel ................................................................................... 12

        A.      The Promissory Estoppel Claim Fails for Lack of a "Clear and Definite Promise"

                and Because CardStarter's Reliance Was Unreasonable as a Matter of Law. ......... 12

        B.      Promissory Estoppel is an Equitable Remedy and Cannot Produce a Windfall. ..... 13

VII.    Fraud ................................................................................................. 14
VIII.   CONCLUSION .......................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aliya Medcare Fin., LLC v. Nickell*,
  156 F. Supp. 3d 1105 (C.D. Cal. 2015) ...............................................................1, 2

*Allen v. City of Arcata*,
  691 F. App'x 461 (9th Cir. 2017).........................................................................3

*BMP Prop. Dev. v. Melvin*,
  198 Cal. App. 3d 526 (1988) ...............................................................................11

*Burgermeister Brewing Corp. v. Bowman*,
  227 Cal. App. 2d 274 (Ct. App. 1964)..................................................................9

*Callahan & Blaine v. Vogeler*,
  No. G055912, 2019 WL 3311722 (Cal. Ct. App. July 24, 2019)...........................9

*Corbett v. PharmaCare U.S., Inc.*
  (S.D. Cal. 2021) 567 F.Supp.3d 1172..................................................................6

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...............................................................................5

*Davis v. Davis*,
  855 P.2d 342 (Wyo. 1993)...................................................................................12

*In re Exemplar Mfg. Co.*,
  331 B.R. 704 (Bankr. E.D. Mich. 2005) (relying on Rest.2d of Contracts, and
  citing *Joerger v. Gordon Food Service, Inc.*, 224 Mich. App. 167, 568
  N.W.2d 365, 369 (1997))....................................................................................13

*Frenzel v. AliphCom*
  (N.D. Cal. 2014) 76 F.Supp.3d 999 .....................................................................6

*In re Google Location Hist. Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................3

*Inter-Mountain Threading, Inc. v. Baker Hughes Tubular Servs., Inc.*,
  812 P.2d 555 (Wyo. 1991)...................................................................................12

*IV Sols., Inc. v. Empire Healthchoice Assurance, Inc.*,
  No. 217CV05615ODWSKX, 2020 WL 5802017 (C.D. Cal. Sept. 29, 2020),
  *aff'd*, No. 20-56132, 2021 WL 5492974 (9th Cir. Nov. 23, 2021) .........................2

ii

*J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*,
No. 18-CV-03886-YGR, 2019 WL 2329248 (N.D. Cal. May 31, 2019) .................................3

*Johnson v. Soulis*,
542 P.2d 867 (Wyo. 1975)........................................................................................14

*Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*,
23 Cal. 4th 305 (2000) .............................................................................................13

*Khan v. CitiMortgage, Inc.*,
975 F. Supp. 2d 1127 (E.D. Cal. 2013).........................................................14, 15

*Money Store Inv. Corp. v. S. California Bank*,
98 Cal. App. 4th 722 (2002) ......................................................................................8

*Morales v. City & Cnty. of San Francisco*,
No. 21-CV-03957-EMC, 2022 WL 1605666 (N.D. Cal. May 20, 2022)................................3

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996) .......................................................................................5

*Nanometrics Inc. v. Optical Sols., Inc.*,
No. 18-CV-00417-BLF, 2019 WL 13123294 (N.D. Cal. Nov. 26, 2019).............................12

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal.4th 459 (1992) ..................................................................................................2

*Nimrod Mktg. (Overseas) Ltd. v. Texas Energy Inv. Corp.*,
769 F.2d 1076 (5th Cir. 1985) .................................................................................14

*of Cnty. of York Ret. Fund v. HP Inc.*,
No. 20-CV-07835-JSW, 2022 WL 624439 (N.D. Cal. Mar. 3, 2022)......................................2

*Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*,
No. C 16-04894 WHA, 2016 WL 6679682 (N.D. Cal. Nov. 14, 2016) ................................11

*Oster v. Caithness Corp.*,
No. 16-CV-03164-WHO, 2017 WL 3727174 (N.D. Cal. Aug. 30, 2017) .............................14

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) .................................................................................2, 3

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
77 F.3d 309 (9th Cir. 1996) ....................................................................................12

iii

*Roth v. First Sec. Bank of Rock Springs, Wyo.*,
    684 P.2d 93 (Wyo. 1984) ................................................................................................4, 15

*Shalaby v. Bernzomatic*,
    281 F.R.D. 565 (S.D. Cal. 2012), aff'd, 584 F. App'x 419 (9th Cir. 2014) ...........................15

*Sonner v. Premier*,
    971 F.3d 834 (9th Cir. 2020) .........................................................................................4, 5

*Steiner v. Thexton*,
    48 Cal. 4th 411 (2010) ........................................................................................................8

*TopDevz, LLC v. LinkedIn Corp.*,
    No. 20-CV-08324-SVK, 2021 WL 6113003 (N.D. Cal. Dec. 27, 2021) .................................4

*Trabing v. Kinko's, Inc.*,
    57 P.3d 1248 (Wyo. Nov. 22, 2002) ...................................................................................13

*Travelers Indem. Co. v. New Orleans Louisiana Saints, L.L.C.*,
    650 F. App'x 416 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en
    banc* (June 30, 2016) ...........................................................................................................2

**Statutes**

Civil Code 1642 ...........................................................................................................................11

UCL or False Advertising Law ..............................................................................................4, 5, 6

1

## I.    **Introduction**

2       CardStarter, Ltd.'s ("CardStarter") claim that two sophisticated corporate parties entered

3   into a multi-million-dollar agreement via an unrelated instant-message and phone calls over

4   several months, in which CardStarter would receive millions of dollars' worth of tokens in

5   exchange for an uncertain amount of liquidity—liquidity CardStarter did not even control—

6   stretches the bounds of reasonableness. CardStarter's amending of its complaint in response to

7   SundaeSwap Labs, Inc.'s ("SundaeSwap") original Motion to Dismiss ("Motion") failed to

8   adequately address the unreasonableness and inadequacy of CardStarter's allegations.  Although

9   many of the allegations in the First Amended Complaint ("FAC") are demonstrably false,

10  CardStarter's allegations fail as a matter of law to state a claim even in the motion to dismiss

11  context where the allegations are assumed true.

12

## II.   **Wyoming Law Applies to CardStarter's "Gentlemen's Agreement" Claims**

13      While conceding that Wyoming law applies to the Collaboration & Marketing Agreement

14  ("CMA"), CardStarter claims that California law applies to all other claims in the FAC,

15  including the alleged "Gentlemen's Agreement."  The fact that the Parties dispute which state

16  law applies to the alleged Gentlemen's Agreement is yet another indication that such an

17  agreement was never finalized.   Nonetheless, Wyoming, not California, law applies to the

18  Breach of Contract, Promissory Estoppel, and Fraud claims relating to the alleged "Gentlemen's

19  Agreement."  The Parties included a provision in their formal CMA providing that Wyoming

20  Law governs the agreement.  *See* Mot. at 9 and Exhibit A to RJN.

21      California courts, both state and federal, hold that "[w]hen two sophisticated, commercial

22  entities agree to a choice-of-law clause..., the most reasonable interpretation of their actions is

23  that they intended for the clause to apply to all causes of action arising from *or related to* their

24  contract." *Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1121 (C.D. Cal. 2015)

25  (emphasis in original) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 468 (1992)).

26  Thus, additional claims relating to or existing because of the formal agreement—including tort

27                                                                          1

28

claims—are governed by the state law expressly provided in the choice-of-law clause. *See Nedlloyd*, 3 Cal.4th at 469 (breach of fiduciary duty claim to be decided by Hong Kong law because it "exist[ed] only because of" the underlying agreement including Hong Kong choice of law provision); *Aliya*, 156 F. Supp. 3d at 1121 (applying Nevada law to contract and tort claims because "all of the tort claims Aliya has asserted exist only because of the parties' contracts").

Here, the CMA outlined the Parties' collaboration going forward, including that Parties agreed to discuss in good faith entering into an investment transaction in the future.  Thus, all claims relating to the alleged "Gentlemen's Agreement" relate to and only exist because of the CMA.  Through inclusion of the Wyoming law provision, the Parties clearly contemplated that their claims, including the promissory estoppel and fraud claims, should be governed by Wyoming law.

In any event, CardStarter does not identify any instance where the choice of a law would affect the outcome of this Court's analysis.  Regardless, Defendants address both California and Wyoming law in this Reply.

## III.   CardStarter's FAC is a Sham Pleading.

Federal law does not permit CardStarter to strategically, and without valid basis, amend its pleading to directly contradict an allegation made earlier in this proceeding in order to avoid dismissal; this Court should strike its improper amendments.  CardStarter incorrectly claims that the relief Defendants request is unavailable under the Ninth Circuit's 2007 decision of *PAE Gov't Servs., Inc. v. MPRI, Inc*., 514 F.3d 856, 860 (9th Cir. 2007), and ignores the substantial collection of cases since that time that have granted just such relief.[2]

---

[2]   *IV Sols., Inc. v. Empire Healthchoice Assurance, Inc*., No. 217CV05615ODWSKX, 2020 WL 5802017 (C.D. Cal. Sept. 29, 2020), *aff'd*, No. 20-56132, 2021 WL 5492974 (9th Cir. Nov. 23, 2021) (holding that a party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding and that where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, *and may, in fact, strike the changed allegations as false and sham*); *Travelers Indem. Co. v. New Orleans Louisiana Saints, L.L.C.*, 650 F. App'x 416, 418 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (June 30, 2016) (holding that a party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding); *York Cnty. on behalf of Cnty. of York Ret. Fund v. HP Inc*., No. 20-CV-07835-JSW, 2022

<sup>(cont'd)</sup>

1    None of the cases cited by CardStarter undermines this well-established principle. *See*

2    *Morales v. City & Cnty. of San Francisco*, No. 21-CV-03957-EMC, 2022 WL 1605666 at *4

3    (N.D. Cal. May 20, 2022) (distinguishing the *PAE* decision as finding that while "'the plaintiff

4    permissibly may alter the challenged conduct in an amended complaint[,]' it 'must allege more

5    factual support' when the plaintiff altered the relevant agreement at issue."); *In re Google*

6    *Location Hist. Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) (permitting contradictory allegation

7    in amended complaint only where new evidence was uncovered during process of litigation to

8    justify new allegations); *Allen v. City of Arcata*, 691 F. App'x 461 (9th Cir. 2017) (permitting

9    amendment of complaint to include additional facts not included in original complaint).

10    Many of CardStarter's allegations in the FAC directly contradict allegations in

11    CardStarter's original pleading. For example, CardStarter attempts to shift[3] the timing of when

12    the Parties supposedly entered into the Gentlemen's Agreement, from June to September

13    (contrast Compl. ¶ 53 with FAC ¶ 60).   This change is a clear attempt to circumvent the

14    operation of the "Complete Agreement" provision of the CMA, which precludes all *prior*

15    representations and which was a central focus point of Defendants' motion to dismiss the

16    original Complaint.  As another example, CardStarter changes what it allegedly promised in that

17    Gentlemen's Agreement from "locking in [its] liquidity pools for migration to SundaeSwap upon

18    Cardano's ADA mainnet launch" (Compl. ¶ 112) to "provid[ing] the liquidity pools directly

19    controlled by CardStarter" and "encourag[ing] and incentiviz[ing] its community to migrate their

20    liquidity to SundaeSwap as well" (FAC ¶ 55).  It purposefully made this change -- removing the

21    _____

22    WL 624439 at *3 (N.D. Cal. Mar. 3, 2022) (holding that a party cannot amend pleadings to directly
      contradict an earlier assertion made in the same proceeding); *Morales v. City & Cnty. of San Francisco*,

23    No. 21-CV-03957-EMC, 2022 WL 1605666 at *4 (N.D. Cal. May 20, 2022) (holding that a party cannot
      amend pleadings to directly contradict an earlier assertion made in the same proceeding); *J. Edwards*

24    *Jewelry Distrib., LLC. v. Wells Fargo & Co*., No. 18-CV-03886-YGR, 2019 WL 2329248 at *4 (N.D.
      Cal. May 31, 2019) (considering facts included in original complaint and omitted from amended
      complaint to determine whether amended complaint stated a claim).

25

26    [3]    CardStarter's decision to simply change what date it alleges the agreement was formed highlights
      the fact that it was never formed at all.

27                                                    3

28

timing of its performance and the allegation that it was required to deposit its entire current liquidity -- to circumvent Defendants' argument in their original motion to dismiss that CardStarter did not allege performance.

| Original Complaint | First Amended Complaint |
|---|---|
| Terms found within the June 15, 2021 draft **"Deal Memorandum"**. (*See* Compl. ¶¶ 47-54). | **[Removes all mention of Deal Memorandum or terms therein]** |
| Reached on **June 21, 2021**. (Compl. ¶¶ 53-54). | Reached on **September 23, 2021**. (FAC at ¶¶ 11, 60). |
| "Transfer **all of its liquidity pools**" to SundaeSwap, "projected to be between $50 million to $100 million." (Compl. at ¶¶ 47, 50). | (1) "directly transfer […] **the portion of the liquidity pools CardStarter controlled**," and (2) "**encourage[ ] and incentiviz[e] its community to do the same.**" (FAC at ¶¶ 11, 55, 125) **[Removes all mention of an estimate of $50 million-$100 million liquidity]** |
| Must deposit liquidity **at ADA mainnet launch**. (Compl. at ¶¶ 47, 50, 112). | **[Removes all mention of liquidity at launch and omits time of performance completely]** |

CardStarter has no justification for changing its narrative in this manner.  Because such pleading tactics are improper, the claims founded on the existence of an alleged Gentlemen's Agreement should be dismissed.  In the alternative, the allegations setting forth the existence and terms of the purported Gentlemen's Agreement should be stricken, and such claims fail as a matter of law (as discussed in Defendants' motion to dismiss the original Complaint).

### IV.   CardStarter Failed to Allege a Claim for Violation of the UCL

CardStarter's arguments in support of its ability to bring its UCL claim are unpersuasive. *First*, CardStarter fails to properly allege a request for equitable relief or lack of adequate remedy at law, and to the extent CardStarter seeks relief different than the relief sought under its contract and fraud claims – i.e., injunctive relief under the UCL or False Advertising Law ("FAL") – the claims fail because even if there were a risk that Defendants might make future

4

1   misrepresentations, CardStarter could not reasonably rely on any such misrepresentations.[4]

2   *Second*, CardStarter's argument that it "would not have acted but for the token promises" (Opp.

3   at 25) does not confer standing under the UCL, where a plaintiff must plead that it lost "money

4   or property."

### A.  CardStarter has not Adequately Pleaded it Lacks an Adequate Remedy at Law

6   CardStarter failed to plead it lacks an adequate remedy at law, and cannot maintain its

7   UCL or FAL claims.  The only reference to lack of remedy at law is in the claim for breach of

8   the CMA, which is distinct from the UCL claim.  CardStarter argues that by seeking damages

9   and injunctive relief in the alternative in the Prayer, it adequately alleged it lacks a legal remedy.

10  Opp. at 23.  But CardStarter's UCL and FAL claims seek only monetary relief—the same relief

11  sought by its contract and fraud claims.  *See* FAC ¶ 175.  Cardstarter argues in its Opposition

12  that it lacks an adequate legal remedy because it is entitled to injunctive relief under its UCL and

13  FAL claims, but the FAC alleges no facts that would support a claim for injunctive relief.

14  Indeed, it has not actually pleaded that it is at any risk of future harm whatsoever.[5]  The

15  allegations in support of CardStarter's UCL/FAL claims are retrospective, and therefore fully

16  compensable through monetary damages, as CardStarter admits through its request of monetary

17  relief for those claims.  "It is a basic doctrine of equity jurisprudence that courts of equity should

18  not act . . . when the moving party has an adequate remedy at law."  *Mort v. United States*, 86

19  F.3d 890, 892 (9th Cir. 1996); *see also Sonner v. Premier*, 971 F.3d 834, 844 (9th Cir. 2020)

20  (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable

21  restitution for past harm under the UCL . . . .").  Cardstarter attempts to manufacture a risk of

---

[4]     Courts in this District frequently dismiss UCL claims pursuant to *Sonner* on a 12(b)(6) Motion to Dismiss. *See, e.g.*, *TopDevz, LLC v. LinkedIn Corp.*, No. 20-CV-08324-SVK, 2021 WL 6113003 at *5 (N.D. Cal. Dec. 27, 2021).

[5]     Instead, it is only *in its Opposition brief* that CardStarter alleges that if this Court does not grant it an injunction "preventing Defendants from continuing to make misstatements to the public, including about the existence and/or terms of their agreements and statements and promises to CardStarter," it will suffer harm that cannot be adequately compensated monetarily. This statement within CardStarter's brief cannot serve as part of its pleading.

5

future harm by arguing in its Opposition that it seeks to prevent SundaeSwap from misrepresenting the circumstances surrounding the Parties' relationship, negotiations, and agreements, but Cardstarter alleges no facts to support its purported concern that SundaeSwap is likely to make any such future misstatements, and mere speculation is insufficient to support a claim for injunctive relief in the absence of allegations of fact supporting such speculation. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (holding that standing for injunctive relief requires an injury-in-fact and that the threat of future injury is actual and imminent, not conjectural or hypothetical.).  Even if CardStarter had alleged an imminent threat of future misrepresentations, Cardstarter nevertheless lacks standing because it cannot plausibly allege that it would be harmed by any such misrepresentations. *Frenzel v. AliphCom* (N.D. Cal. 2014) 76 F.Supp.3d 999, 1015 ("A plaintiff seeking prospective injunctive relief in federal court must demonstrate not only that 'he has suffered or is threatened with a concrete and particularized legal harm,' but also that there is 'a sufficient likelihood that he will again be wronged in a similar way.'").  To show harm from any future misstatements, Cardstarter would have to allege that it would reasonably rely upon any theoretical future misstatements. *Corbett v. PharmaCare U.S., Inc.* (S.D. Cal. 2021) 567 F.Supp.3d 1172, 1185 ("[A]ctual reliance is a required element for standing to bring suit under the UCL, FAL…..").  Having already (incorrectly) branded SundaeSwap a liar and a thief, Cardstarter cannot now claim that it would be misled by any such future misstatements concerning the parties' negotiations or agreements. As a result, Cardstarter has failed to alleged entitlement to injunctive relief and thus failed to allege entitlement to any remedy beyond the remedies it seeks under its claims for breach of contract and fraud.  Its claims under the UCL and FAL must therefore be dismissed.

### B.  CardStarter Was Not Injured By Defendants' Alleged Actions

CardStarter's UCL claim also fails because it does not allege a loss of money or property. CardStarter has not alleged that it (as distinguished from its community members) deposited any liquidity to the SundaeSwap DEX in reliance on the representations it alleges Defendants made.

6

In the sole case cited by CardStarter for its argument to the contrary, the plaintiff pleaded that it had actually purchased a product and had purchased it at a premium. *See* Opp. at 23, citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018). Here, CardStarter has purchased nothing, and has not pleaded any money or property from which it parted ways. CardStarter's sole purported injury is that it opened a smart contract to permit its community members to deposit liquidity to SundaeSwap's Cardano DEX if they elected to do so in their sole discretion in the future. *See* Opp. at 23. CardStarter does not articulate an injury that it has suffered from opening that smart contract. Even if CardStarter had deposited liquidity at the DEX's launch, it did not lose that liquidity. It was simply transferred from CardStarter's platform, which did not permit the exchange of CardStarter tokens for other currencies, to SundaeSwap's platform, which does. CardStarter has not pled a cognizable injury in support of its UCL claim.

## V.  CardStarter Did Not Adequately Allege the Existence of the Gentlemen's Agreement.

CardStarter's claim for breach of the Gentlemen's Agreement also fails as a matter of law because CardStarter has not sufficiently alleged that the agreement even exists. First, the alleged agreement, even as pled, is vague, and CardStarter's obligations thereunder are illusory. Second, CardStarter fatally fails to allege essential terms of the purported Gentlemen's Agreement.

### A. CardStarter's Alleged Promise Was Illusory, and its Purposefully Unclear Pleading Cannot Cure That.

CardStarter claims that the contract terms it pleaded were not vague, its alleged promise was not illusory, and even if it were illusory, CardStarter's "performance" cured the illusory nature of the promise, rendering the contract enforceable. All three claims are related. Whether CardStarter's alleged promise was illusory depends on what it promised, and whether CardStarter's "performance" can cure the illusory nature of that promise depends on what was performed. However, we cannot determine either one: CardStarter is purposefully cryptic in pleading these issues—it is confusing because CardStarter wants it to be confusing.

1         Throughout the FAC and Opposition, CardStarter states that it promised to provide

2  SundaeSwap its entire current liquidity. *See, e.g.*, FAC at ¶ 11 ft. 1 (defining Current Liquidity

3  Pools as "[t]he liquidity pools controlled by CardStarter and the liquidity pools CardStarter

4  encouraged and incentivized its community to migrate to SundaeSwap"); FAC at ¶ 60 ("the

5  agreement that CardStarter would deliver to SundaeSwap the liquidity pools it had developed

6  had been settled for months"); Opp. at 3:26-27 ("CardStarter agreed to provide SundaeSwap with

7  the liquidity pools that CardStarter already had developed") (emphasis removed).  If CardStarter

8  promised its entire current liquidity in return for 7.5% of SundaeSwap's tokens, its promise was

9  illusory because it never had the power to deliver all of the liquidity.  In fact, more than a

10  significant portion of its liquidity was within the control of individual Cardholders.  Because it

11  did not have control over much of its liquidity, the promise to provide its "current liquidity" was

12  vague and illusory, performance was impossible, and any alleged contract is unenforceable.

13         Cardstarter argues that its promise was not illusory because it "did not promise that it

14  could deliver liquidity pools over which it did not have direct control." Opp. at 13:4-5.  It asks

15  the Court to believe that SundaeSwap agreed to provide a multi-million-dollar share of its tokens

16  in return for, not CardStarter's total liquidity, but rather whatever undisclosed portion of its

17  liquidity CardStarter independently controlled (potentially zero) plus whatever portion of the

18  remaining liquidity that third-parties (Cardholders) chose in their sole discretion at some later

19  date to agree to commit to the DEX in response to CardStarter's "encouragement" (potentially

20  zero).  For this to be true, SundaeSwap must have decided to "roll the dice" regarding:  the

21  amount of CardStarter's total liquidity, the amount of liquidity CardStarter independently

22  controlled, whether/how many Cardholders would choose to lock in their liquidity, and the date

23  on which the "current" liquidity would be gauged and/or Cardstarter's performance would be

24  due.  Clearly, no one would agree to that.  CardStarter's consideration was illusory because it

25  could have been promising nothing (if the Cardholders held 100% of the liquidity in their control

26  and none of them chose to lock in their shares).

27  8

CardStarter also argues that even if its promise was illusory, its "performance" cured the illusory nature of the promise.  Performance, even partial performance, can sometimes render an otherwise illusory contract enforceable.  In the cases permitting this relief, the party that made the illusory promise either fully or *substantially* performed.  *Money Store Inv. Corp. v. S. California Bank*, 98 Cal. App. 4th 722, 729 (2002), as modified (May 29, 2002) (lender's full performance in providing the loan money necessary to complete the sale cured any illusory aspect of the agreement); *Steiner v. Thexton*, 48 Cal. 4th 411, 422, (2010) (illusory nature of plaintiff's promise to seek a parcel split was cured because plaintiff "undertook substantial steps toward obtaining the parcel split and incurred significant expenses doing so" including completing 75 to 90% of the work needed to obtain the parcel split and county approvals); *Burgermeister Brewing Corp. v. Bowman*, 227 Cal. App. 2d 274, 280 (Ct. App. 1964) (illusory promise cured where party distributed brewery's beer for *19 years* and, among other things, "had provided a fleet of trucks, painting them with Burgermeister advertising, had contributed to the brewery's advertising fund, had built warehouse facilities and had enlarged his inventory beyond his winter needs").

CardStarter cannot take advantage of the "partial performance" exception when it has not alleged sufficient facts regarding its performance.  In fact, it has done everything in its power to avoid pleading how it allegedly performed.  Glaringly absent in the FAC (and its Opposition) are any facts regarding (1) the amount of liquidity it actually deposited to the DEX; (2) the size of that portion in comparison with its entire current liquidity on that date; (3) what date Cardstarter deposited it; (4) how many Cardholders chose to lock in their liquidity; (5) the amount of liquidity that was ultimately provided by Cardholders to the DEX; (6) what date that Cardholder liquidity was deposited; or (7) the size of that liquidity in comparison with the entire portion of liquidity controlled by Cardholders.  With these details tellingly absent, the general allegations of CardStarter's "performance" cannot operate to cure the illusory nature of its promise.[6]

---

[6]    *See also Callahan & Blaine v. Vogeler*, No. G055912, 2019 WL 3311722, at *7 (Cal. Ct. App.

(cont'd)

1    The alleged contract fails based on this alone.

2    **B.  No Contract Was Formed through the "Sounds Good" Message in Light of the Type of Transaction, the Parties' Ongoing Negotiations, and Missing Essential Terms.**

3    CardStarter argues that the alleged Gentlemen's Agreement was enforceable, supporting

4    this argument with generalized holdings from California courts that "time of performance" is not

5    *necessarily* an essential term and that contracts do not always have to be "formalized in a

6    written, signed contract." Opp. at 13-17.  However, under the circumstances as pleaded in the

7    FAC, both time of performance and a concrete description of CardStarter's obligation (liquidity

8    deposit) were essential terms of the contract and such a multi-million dollar transaction could not

9    have been finalized through a "sounds good" instant message.

10   **1.  The time of performance and the nature and value of the consideration are essential terms.**

11

12   CardStarter fails to allege the timing of its promise to deposit liquidity, which is an

13   essential term for this agreement.  As CardStarter alleges, Defendants' entire goal in negotiating

14   the Gentlemen's Agreement was to have "the largest … [TVL] of any Cardano DEX."  FAC at

15   ¶¶ 154, 48, 57, 77.  Moreover, the CMA requires that CardStarter deposit all of its post-launch

16   liquidity in the SundaeSwap DEX in exchange for no tokens (at launch or otherwise).  Therefore,

17   characterizing the timing of CardStarter's performance as unessential is not just illogical, but

18   inconsistent with the parties' own agreement and CardStarter's other allegations.

19   Additionally, as explained in Section V(A), the terms of CardStarter's obligations under

20   the "Gentlemen's Agreement" are unclear.  More specifically, the amount of liquidity

21   CardStarter was expected to deposit to the DEX was a key term in the negotiation of the

22   purported Gentlemen's Agreement.  As CardStarter alleges, Defendants' goal in negotiating a

23   reward of tokens for depositing liquidity was to "snag the rich prize of CardStarter's Current

24   Liquidity Pools, worth millions of dollars…" (FAC at ¶ 48) and to launch the SundaeSwap DEX

25   _____

26   July 24, 2019) ("A party complaining of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations.")

27

28

with the most TVL of any Cardano DEX (FAC at ¶ 57).  Exactly what that means—what the amount of liquidity was—is an essential term of the alleged Gentlemen's Agreement.

CardStarter attempts to avoid the conclusion that the amount of liquidity it was depositing at launch is an essential term by pointing to the lack of a definitive amount of liquidity in the terms of the CMA. FAC at ¶ 10.  However, the CMA, unlike the alleged Gentlemen's Agreement, did not require that Defendants reward CardStarter with tokens at all, much less a substantial amount of SundaeSwap's limited token pool.  Rather, the CMA provided terms for the Parties' initial collaboration, not the terms for CardStarter to provide liquidity to the DEX in exchange for token rewards—a conversation expressly deferred to the future under Section 4 of the CMA. By contrast, the alleged Gentlemen's Agreement was supposedly an agreement precisely about an exchange of deposited liquidity for a reward of tokens.  Because CardStarter has failed to plead the key terms of the alleged Gentlemen's Agreement, the claim for breach of the Gentlemen's Agreement fails as a matter of law.

### 2. Under the facts as pleaded in the FAC, the "sounds good" instant message could not have formed a contract.

In addition to the fatal lack of essential terms, the circumstances as pleaded by CardStarter—including the ongoing negotiations of the Parties and the substantial nature of this transaction—establish that no contract was formed by Defendant Motavaf's "sounds good" instant message.  Although contracts may be made orally or through informal writings in the right circumstances, the agreement alleged by CardStarter and the related informal communications fail to satisfy the requirements for an enforceable informal agreement.[7]

---

[7]      The cases cited by CardStarter in opposition to this point are not persuasive.  First, it cites several cases where a court held that more than one *formal* written contract can be "taken together" when made as part of substantially one transaction, pursuant to Civil Code 1642.  *See* Opp. at 15, citing *Holguin v. Dish Network LLC,* 229 Cal. App. 4th 1310, 1320-23 (2014), *BMP Prop. Dev. v. Melvin,* 198 Cal. App. 3d 526, 531 (1988).  This issue is inapposite and irrelevant here.  Next, none of the cases it cites where a binding contract was formed over email or text message involved a deal between two sophisticated companies worth over $100 million.  *Starace v. Lexington Law Firm* (involving standard engagement agreement for legal and professional services); *In Re East Airport Development, LLC* (involving, within logistics of bankruptcy, lender's obligation to release real estate lots upon the debtor's payment of specified release prices); *Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*, No. C 16-04894 WHA, 2016

(cont'd)

1    Defendant Motavaf's "sounds good" instant message was a response to messages clearly missing

2    material terms of the alleged Gentlemen's Agreement.  As pleaded by CardStarter, the Parties

3    continued to negotiate the terms following that instant message.  *See, e.g.*, FAC ¶¶ 59, 70.

4

5    **VI.   Promissory Estoppel**

6         **A.  The Promissory Estoppel Claim Fails for Lack of a "Clear and Definite Promise"
          and Because CardStarter's Reliance Was Unreasonable as a Matter of Law.**

7         As discussed in the opening brief, negotiations or "agreements to agree" cannot be

8    considered "clear and definite promises" for the purpose of a promissory estoppel claim.  *Davis*

9    *v. Davis*, 855 P.2d 342, 348 (Wyo. 1993) (to form the basis of a promissory estoppel claim,

10   statements "must be more than precatory or mere statements of hope or 'agreements to agree.'");

11   *Nanometrics Inc. v. Optical Sols., Inc*., No. 18-CV-00417-BLF, 2019 WL 13123294, at *6–7

12   (N.D. Cal. Nov. 26, 2019) ("Where an alleged promise is conditional or subject to further

13   negotiations, the 'clear and unambiguous' requirement for promissory estoppel is not met.")

14   Here, the communications of Defendants alleged by CardStarter in its FAC were at most

15   agreements to agree, as evidenced by their refusal to enter into a finalized transaction prior to

16   launch of the DEX.  *See, e.g.*, FAC ¶¶ 68, 83-84 (refusing to mint tokens or formalize an

17   agreement until after the DEX launch).

18        Relatedly, CardStarter's promissory estoppel claim fails because reliance on the alleged

19   "promise" was unreasonable as a matter of law. *See Inter-Mountain Threading, Inc. v. Baker*

20   *Hughes Tubular Servs., Inc*., 812 P.2d 555, 560 (Wyo. 1991) (for transaction that "would have

21   bound the parties for a substantial period of time and would have involved substantial sums of

22   money" it was unreasonable to rely on representations that were not a formal written contract);

23   *and see Rennick v. O.P.T.I.O.N. Care, Inc.,* 77 F.3d 309, 317 (9th Cir. 1996) (where language

24

25   WL 6679682, at *4 (N.D. Cal. Nov. 14, 2016) (broad arbitration clause from written agreement relating to
     recruiting of one team member did not apply to separate, less formal agreement regarding recruiting of
26   three other team members).

27                                                    12

28

was non-binding, "reliance on a promise which [the party] knew to be unenforceable was unreasonable" as a matter of law.)

**B. Promissory Estoppel is an Equitable Remedy and Cannot Produce a Windfall.**

Promissory estoppel is available if injustice can only be avoided through enforcement of the promise.  But enforcing the "promise" in this case would result in a windfall for CardStarter.  CardStarter may not gain a massive profit through the equitable theory of promissory estoppel.

CardStarter simply chooses not to respond to this point, instead deflecting that it is SundaeSwap who has "profited" as a result of some undisclosed portion of liquidity being "migrated to the SundaeSwap DEX" from Cardholders.  Opp. at 17.  But if the "injustice" is the amount of liquidity deposited in the SundaeSwap DEX, CardStarter has admitted that enforcement of the alleged promise (the value of the alleged 7.5% of the SundaeSwap tokens) is not the proper remedy to "avoid injustice."  Indeed, under these circumstances, in the clear and obvious absence of a contract, the idea that CardStarter would receive 7.5% of SundaeSwap's tokens regardless of its own contribution cannot be squared with justice.

Any recovery under the equitable theory of promissory estoppel must be limited as justice requires. *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) ("Kajima does not have a contract with MTA. Rather, it may recover damages solely under the equitable doctrine of promissory estoppel" which should be "limited as justice requires") (citing Rest. 2d of Contracts, § 90(1), and recognizing its judicial adoption in the state of California. *See also Trabing v. Kinko's, Inc.*, 57 P.3d 1248, 1255 (Wyo. Nov. 22, 2002) (citing Rest. 2d of Contracts § 90(1)). Indeed*, courts have recognized that for promissory estoppel claims "[t]he guiding principle in determining an appropriate measure of damages is to ensure that the promisee is compensated for the loss suffered to the extent of the promisee's reliance." *In re Exemplar Mfg. Co*., 331 B.R. 704, 720 (Bankr. E.D. Mich. 2005) (relying on Rest.2d of Contracts, and citing *Joerger v. Gordon Food Service, Inc*., 224 Mich. App. 167, 568 N.W.2d 365, 369 (1997)).  In other words, equity only permits recovery of damages actually incurred,

1   even where the terms of the promise could have resulted in additional recovery. *See*

2   *Kajima/Ray*, 23 Cal. 4th at 315-16.

3          CardStarter seeks recovery of the USD equivalent of the tokens it alleges Defendants

4   promised it. FAC ¶ 59.  However, CardStarter does not allege it deposited any liquidity to the

5   SundaeSwap DEX directly or has in any way suffered a monetary loss. FAC at ¶ 12. Rather, it

6   alleges only that it opened a smart contract to permit others to deposit *their* liquidity. *Id.*

7   Because CardStarter has not alleged any facts supporting the claim that it deposited anything to

8   the DEX itself, it fails to plead it incurred monetary injury in reliance on the alleged promise of

9   tokens and cannot recover its purported expectation under the alleged Gentlemen's Agreement.

10  Contrary to CardStarter's assertions, allowing CardStarter to recover a benefit-of-the-bargain

11  remedy under a promissory estoppel theory would result in a massive windfall to CardStarter.

12          Even if CardStarter could succeed on its promissory estoppel theory, and it cannot,

13  justice requires that its recovery be limited to the monetary amount of the liquidity it actually

14  deposited. *See Nimrod Mktg. (Overseas) Ltd. v. Texas Energy Inv. Corp.*, 769 F.2d 1076, 1080

15  (5th Cir. 1985) ("One recovering under promissory estoppel should not … experience a

16  windfall.").

17  **VII.   <u>Fraud</u>**

18          CardStarter's fraud claim fails because it has not pled an actionable misrepresentation or

19  justifiable reliance.  The alleged representations are not promises at all; they are discussions and

20  negotiations of terms, as the Parties expressly agreed to undertake in the CMA.  Mot. at 14.

21  Fraud will not be imputed to a party whose representations lend themselves equally to an

22  interpretation consistent with honesty. *See Johnson v. Soulis*, 542 P.2d 867, 874 (Wyo. 1975);

23  *Oster v. Caithness Corp.*, No. 16-CV-03164-WHO, 2017 WL 3727174 at *11 (N.D. Cal. Aug.

24  30, 2017).

25          Additionally, relying on this alleged multi-million-dollar transaction (which they allege

26  was cemented through the "sounds good" instant message) was unreasonable, especially because

27                                         14

28
                                        DEFENDANTS' REPLY IN SUPPORT OF MOTION
                                        TO DISMISS AMENDED COMPLAINT
                                        CASE NO. 3:22-CV-757-RS

Defendants expressly and repeatedly refused to put the agreement in writing before the DEX launched. *See, e.g.*, FAC ¶¶ 61, 84.

While "[o]rdinarily, the decision of whether reliance is justifiable is a question for the trier of fact[,]" courts can and do dismiss fraud claims for lack of reasonable reliance as a matter of law. *See, e.g.*, *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1141 (E.D. Cal. 2013); *Shalaby v. Bernzomatic*, 281 F.R.D. 565, 574 (S.D. Cal. 2012), aff'd, 584 F. App'x 419 (9th Cir. 2014); *McColgan v. Mut. of Omaha Ins*. Co., 4 F. Supp. 3d 1228, 1234 (E.D. Cal. 2014) (decedent's reliance on the one-page application to determine the extent of the policy's coverage was unreasonable); *Roth v. First Sec. Bank of Rock Springs, Wyo.*, 684 P.2d 93, 97 (Wyo. 1984) (holding decedent's reliance on misrepresentations not reasonable given sophistication of plaintiff).

Here, it was objectively unreasonable for CardStarter to take action in reliance on the communications alleged in the FAC as if there were a finalized deal. If anything, the allegations show CardStarter was on notice that it should be concerned regarding whether an enforceable agreement for a multi-million-dollar transaction had been reached. *Compare with Khan*, 975 F. Supp. 2d at 1141 (dismissing fraud claim because the complaint's allegations showed "grounds to arouse suspicion" in the plaintiff to "disbelieve" that she would receive a loan modification or foreclosure sale postponement, and thus the "complaint suggests that Ms. Khan was on notice of problems to frustrate the notion of her justifiable reliance" on the representations of postponed foreclosure). CardStarter was unreasonable as a matter of law in acting in reliance on the alleged communications as if they were a finalized contract, and the fraud claim must be dismissed.

## VIII.    <u>CONCLUSION</u>

For the reasons discussed above and in their Motion, Defendants request that this Court grant their Motion to Dismiss the First Amended Complaint.

1    Dated:  July 15, 2022                    /s/ *Helen Goodman*
                                                  Helen Goodman
2
                                             **BRYAN CAVE LEIGHTON PAISNER LLP**
3                                            Eric Martin
                                             Meryl Macklin
4                                            Simren K. Gill
                                             Helen C. Goodman
5                                            Sasha D. Riedisser
6                                            *Attorneys for Defendants*
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
                                                      16
27
28